LEMMON, Judge.
This suit to recover workmen’s compensation benefits arises out of an accident in which the company van plaintiff was driving struck a parked ear. The principal issues on appeal are whether plaintiff was in the course of his employment at the time of the accident and whether defendant presented sufficient proof in support of the special defense of intoxication.

Facts

At the time of the accident plaintiff was an air conditioning repairman employed by Lake Forest, Inc., a real estate developer. His duties included servicing units in various subdivisions, apartment complexes and shopping centers which had been developed by his employer.
Plaintiff’s regular hours were 8:00 a. m. to 4:30 p. m. He used the van assigned him by the employer to carry his tools and equipment to various places on service calls, and he carried a “beeper” on his person so that his office could contact him while on calls or after hours. Because plaintiff was often required to make service calls after his regular hours, his supervisor instructed him to take the van home each evening. However, he was specifically instructed not to use the van for personal purposes and not to work overtime without first obtaining permission.
Plaintiff testified: On the day of the accident he worked on a compressor most of the day. In the afternoon he was given several other calls by office personnel, and two or three of the assignments required him to call on customers after 5:00 p. m., when someone would be at the customers’ premises to allow him entrance. After he completed these calls, he headed east on Highway 90, in the direction of his home. He stopped at Collier’s Restaurant, where his wife worked, to check something on her car, and he had a sandwich and two beers during the 30 to 40 minutes he spent there. He left the restaurant, located on Highway 90, and continued east on the highway toward his home. Several miles down the highway he hit a dip in the road, and the van began to vibrate. He slowed until the van was under control, and as he resumed speed he hit a pothole and lost control. Upon braking, the van pulled to the right, and he hit a car parked on the side of the road. The accident occurred about dusk.
The investigating officer arrived about 8:15 p. m. and sent plaintiff to the hospital. He smelled alcohol on plaintiff’s breath, but observed no other indication of intoxication, and he did not order any testing of alcohol level.

Course of Employment

Lake Forest’s primary defense was that plaintiff’s accident was not in the course of his employment, because the colli *649 sion occurred about three hours after his regular working hours, when he did not have permission to work overtime and when he had just completed a personal errand.
The determination of course of employment involves a time and place inquiry into relationship to employment. Since plaintiff was required to work at various places, he was in the course of employment while at or while traveling between customers’ locations during regular hours. And since he was required to take the van home after the last service call each day to serve the convenience of his employer, he was considered in the course of employment while traveling from the last service call to his home.
As found by the trial court, this accident happened while plaintiff was in a direct route between the place of the last service call and his home. Complicating the determination are the facts that the accident occurred long after regular working hours and that plaintiff had deviated for a personal errand on his trip home from the last call.
As to the time of the incident, the evidence apparently found to be credible established that plaintiff (Lake Forest’s only air conditioning mechanic) was assigned several calls that afternoon, that he “notified them” (office personnel) that two or three service calls could only be made after 5:00 p. m., and that he made these calls. While he admittedly did not seek the required permission of supervisory personnel to work overtime, he was in fact furthering his employer’s interest by making these calls at a time convenient to the customers, and there was uncontradicted testimony that he had followed this procedure before. Accordingly, the evidence supports a conclusion that plaintiff’s trip from the last service call to his home was in the course of employment, at least until he stopped at the restaurant.
Plaintiff did not detour to get to the restaurant, but simply stopped there on his regular and direct route home. Perhaps if plaintiff had sustained an injury while checking his wife’s car, such an injury may be non-compensable as having occurred during a deviation for a personal mission. However, this accident occurred after plaintiff had completed the personal mission and had resumed the trip home, thereby reentering the course of employment. Under these circumstances there is no manifest error in the determination that plaintiff was in the course of employment when injured.

Defense of Intoxication

In support of this defense based on R.S. 23:1081(2) Lake Forest argues that plaintiff had alcohol on his breath, that he behaved in the hospital as if he were intoxicated, and that running off the highway into a car parked on the shoulder is an act characteristic of a drunk driver.
The smelling of alcohol was the only factor established by the policeman as indicative of intoxication. Plaintiff’s combative behavior at the hospital, while compatible with drunkenness, was also compatible with the multiple serious injuries he had sustained. Finally, many sober drivers lose control of their cars and run off the road.
On the evidence presented we cannot say the trial court erred in concluding defendant failed to meet the burden of proving the defense of intoxication.

Medical

In the March 18,1975 accident plaintiff sustained a fractured skull, with a cerebral contusion of one frontal lobe; two fractures of the orbit of the eye; a fractured clavicle; a fractured finger; two fractured ribs, with pulmonary contusion and ultimately a collapsed lung; lacerations of the forehead, lip and ear; and abrasions of the chest and abdomen. He was in intensive care for several days and was hospitalized for nine days.
After his release from the hospital, most of the multiple injuries cleared uneventfully, and plaintiff was followed primarily by Dr. Naccari, a family practitioner, and by Dr. Richardson, a neurological surgeon.
*650 Dr. Richardson diagnosed a cerebral concussion and saw plaintiff approximately monthly for complaints of headaches, neck soreness, nervousness, irritability and difficulty in speech. Finding no evidence of damage to the central nervous system and no neurological deficit, he attributed the complaints to post-concussion headaches. In July, 1975 he stated he could offer no further assistance and discharged plaintiff. He was not questioned as to any residual disability.
On cross-examination the doctor noted that post-concussion headaches usually do not last over three months and usually do not reoccur; that he found no indication of personality changes and that significant changes occur only when there is injury to both frontal lobes (plaintiff injured only one); that frontal lobe injuries do not generally make persons nervous and irritable, but rather make them uncaring; and that plaintiff had a “very mild” form of difficulty in speech.
Dr. Naccari followed plaintiff’s progress with frequent examinations through August and observed no delayed signs of internal head or abdominal injuries. On October 10, 1975 he advised plaintiff to return to work and to return for examination if symptoms reappeared. He further stated he had not had any difficulty in communicating with the patient.
Plaintiff also presented Dr. Vogel, a neurosurgeon that he consulted for evaluation of headaches and shoulder pain in February and April, 1976. After a neurological examination and review of the hospital records and an electroencephalogram (which he classified as normal overall with some abnormal signs), Dr. Vogel diagnosed a post-concussion syndrome, which generally resolves in three to six months, although some take longer. The doctor expressed the expectation that plaintiff would return to gainful employment without permanent impairment.
In April, 1976 plaintiff began working as an air conditioning mechanic for another company, but was released after about four months because of unsatisfactory performance and a dispute over workmen’s compensation or unemployment compensation involving a knee injury on that job. About a year later he went to work in the same capacity for another air conditioning company and was still working there at the time of the January, 1978 trial.
The trial court rejected Dr. Naccari’s testimony, but even when that testimony is disregarded, the remaining evidence simply does not provide medical support to fulfill plaintiff’s burden of proving permanent disability or any disability beyond April, 1976. The fact of severe initial injury and the credible testimony of plaintiff and his wife as to residual effects cannot provide sufficient support for a finding of continuing disability when every doctor stated that plaintiff could return to work without permanent impairment and when no doctor even examined plaintiff after April, 1976, the date that he in fact returned to full time employment.
The judgment awarding benefits based on permanent disability must be modified to award weekly benefits through April, 1976.

Penalties and Attorney's Fees

The trial court, finding Lake Forest’s defense of intoxication to be frivolous, awarded penalties and attorney’s fees. However, Lake Forest’s defense that plaintiff’s injury did not occur in the course of his employment must be regarded as a serious defense presented in good faith. Indeed, since the accident occurred at a time when plaintiff was not usually engaged in employment activities and did not have the required permission to do so, and when he had just completed a personal mission, plaintiff had to overcome a presumption that the accident was not employment related.
Although plaintiff’s injuries were serious and his medical bills catastrophic, Lake Forest was still entitled to a judicial determination of its good faith defense without being subjected to penalties based on arbitrary refusal to pay compensation.

*651
Decree

The judgment of the trial court is amended to award workmen’s compensation benefits only through April, 1976 and to delete the award of penalties and attorney’s fees. As amended, the judgment is affirmed.

AMENDED AND AFFIRMED.